The Commonwealth *ex rel.* Dr. GEORGE F. LEHMAN *against* Dr. JOEL B. SUTHERLAND.

*Philadelphia.*

QUO WARRANTO.

*Monday,*
April 7.

THIS was a rule to shew cause, why leave should not be granted to file an information in nature of a *quo warranto,* against *Joel B. Sutherland,* at the relation of *George F. Lehman,* to enquire by what authority the said *Joel B. Sutherland* exercised the office of Lazaretto physician, for the port of *Philadelphia.*

The office of Lazaretto physician, is, in respect to the power of removal, completely subject to the controul of the legislature.

*T. Sergeant,* for the relator. The question turns upon the legality of the commission issued to Dr. *Lehman* by Governor *Snyder,* and involves the decision of the constitutional powers of the Governor to remove an officer at his discretion, where the law prescribes a particular mode of removal. Dr. *Sutherland* was commissioned as Lazaretto physician, by the Governor, on the 1st *May,* 1816; to hold, until the appointment and commission should be, *by the said Governor or other lawful authority,* superseded and annulled. On the 14th *March,* 1817, the relator, Dr. *Lehman,* received a commission from the Governor for the same office, to be held in the same manner. These appointments were made under

There are matters of temporary and local concern, which, although comprehended within the term *office,* have not been thought to be embraced by the constitution, which gives to the Governor the power of appointing to offices established by law.

An act of assembly declaring, that an officer may be removed on the application of certain persons, means, that he shall not be removed without such request.

When a law providing for the appointment of officers by the Governor, and limited to a period of years, is continued by a subsequent law for a further period, the commissions of such officers endure only for the time to which the law was originally limited; if there is nothing in such subsequent law, inducing a belief, that the legislature contemplated taking away the power of appointment from the governor, and especially, if material changes are made in the first law.

VOL. III.—T

1817.

The Com-
monwealth
ex rel.
LEHMAN
v.
SUTHERLAND.

the act of 17th *March*, 1806, continued by subsequent laws, which, after directing the appointment of these officers by the Governor, enacts " that they shall be under the direction and " controul of the board of health, and may be removed from " office, at the request of a majority of the members of the " board of health." We contend, that the Governor's power of removal is not impaired by the modifications to which it is subjected in this law ; and that he may remove Dr. *Sutherland* and appoint another, although there has been no request of the board of health to remove him. By the 8th section of the 2d article of the constitution, it is provided, " that the Governor shall appoint all officers, whose offices " are established by this constitution, or shall be established " by law, and whose appointments are not herein otherwise " provided for." The offices otherwise provided for in the constitution, are the state treasurer, who is to be elected annually by the legislature, art. 6, sect. 5, and militia officers, who are to be appointed in such manner and for such time, as shall be directed by law, art. 6, sect. 2. and some others ; but the present office is " one established by law, and not provided " for by the constitution." Of course the power of appointment vests in the Governor. It has been the received construction of the constitution in this State, that the power of appointment carried with it the power of removal, in offices whose duration was not limited by the constitution. This principle was acted upon by Governor *M'Kean*, who had been one of the leading framers of the constitution ; and was Chief Justice under it until his election as Governor. While Governor, he superseded Dr. *Reynolds*, a member of the board of health, though the law creating the office expressly limited it to one year, which was not then expired. Governor *M'Kean*, in his answer to the charge made against him by the legislature, for superseding Dr. *Reynolds*, states it as an axiom of political science, that the power of appointment to office, carries with it as an incident, the power of removal, in all cases not expressly excepted. *Journ. of H. R. of Pennsylvania*, 1807, p. 424. Such exception should be by the constitution. But even if an act of assembly might affect the Governor's power of removal, it should be done expressly, and not by implication. In the present case, the law has no negative words. It does not say

that the officer shall be removed in the mode pointed out, and not otherwise.   He cited *John* v. *Nichols.(a)*

2. The law of 1806 expired on the 25th *March*, 1817. On the 13th of that month, a new act was passed continuing the original act and its supplements for three years, from the 25th *March*, 1817, and various alterations were made in the organisation of the board, and in other respects.   The members of the board are to be appointed in a different manner. They are no longer to be appointed by the Governor, but by the corporations of the city and county of *Philadelphia*, bodies not under his controul.   Their number is increased from 5 to 11.   No compensation is allowed them.   The restriction as to being eligible after a certain period of service, is removed.   All these circumstances prove, that the old law must be considered as expiring on the 25th *March*, 1817, and that the commission of Dr. *Sutherland* under the old law is no longer in force.   The Governor was bound to issue a new commission for the office.

*Hopkinson,* contra.

1. The power of the Governor is generally thought extensive enough, and ought not to be increased.   We contend, that the legislature may impose such limits to offices of their creation as they please, in perfect consonance with the constitution.   The constitution only gives the Governor the power of appointment; it does not give him the power of removal, which is a distinct and independent thing.   The legislature has frequently exercised the power of providing for the duration of offices of their creation, to which the Governor was to appoint.   Notaries public are not mentioned in the constitution, but created by law, and the tenure of their office is during good behaviour. 3 *Smith's Laws*, 6. Act of 5th *March*, 1791.   As to the removal of Dr. *Reynolds*, it was made one of the articles of impeachment against Governor *M'Kean.*   To this Governor *M'Kean* answered, that the act of assembly mentioned the case of removal; which supposed a power existing somewhere, and as it was not expressly vested elsewhere, it devolved on the executive.

2. The original act never has expired; it has been con-

1817.

The Commonwealth
*ex rel.*
LEHMAN
*v.*
SUTHERLAND.

(a) 2 *Dall.* 188,

tinued from time to time, and is still continued by the act of 13th *March*, 1817. The practical construction has in such case been, that the commissions had not expired. But Dr. *Lehman's* commission is dated the 14th *March*, 1817, and the law did not expire until the 25th *March*, 1817. In any event, therefore, Dr. *Lehman's* commission has expired.

TILGHMAN C. J. Rule to shew cause why leave should not be given to file an information in nature of a *quo warranto* against Dr. *Joel B. Sutherland*, at the relation of Dr. *George F. Lehman*, to inquire by what authority, the said *Joel B. Sutherland* exercises the office of Lazaretto physician of the port of *Philadelphia*.

Dr. *Sutherland* has appeared by his counsel, and shewn cause against the filing of an information, viz. that he exercises the office, under a commission from the Governor of *Pennsylvania*, dated 1st *May*, 1816, whereby he was appointed to this office, to hold the same, " *until he should be re-* " *moved by the Governor, or other lawful authority.*" It is admitted, that the Governor appointed Dr. *Lehman* to the same office, by commission dated 14th *March*, 1817. But it is contended, on the part of the defendant, that the Governor had no power to remove him, without the request of a majority of the members of the board of health, and that no such request had been made, when the commission issued to Dr. *Lehman*. This question will depend on the constitution of the Commonwealth, and several acts of assembly respecting the board of health.

By an act of assembly, passed 17th *March*, 1806, (originally made to continue five years, and from thence to the end of the next session, and no longer, but continued from time to time and still in force, except certain parts,) a board of health, consisting of five members, to be appointed annually by the Governor, was incorporated. Attached to the board of health, were two physicians, to be also appointed by the Governor, one, called " the Lazaretto Physician," who was to reside at the Lazaretto ; the other to reside in the city of *Philadelphia*, and called " the Port Physician ;" and it is enacted, that these physicians " shall be under the " direction and controul of the board of health, and may " be removed from office at the request of a majority of the

" members of the board of health." It was argued by the counsel for the relator, that by the constitution of the State, the Governor had a right to appoint to this office, and consequently to remove from it. Therefore, they suppose, it was not the intent of the act of assembly to deprive the Governor of his constitutional right. And they say, moreover, that whatever may be the construction of the act of 17th *March*, 1806, while the board of health remained constituted according to the provisions of that act, yet it cannot be supposed, that the Governor was intended to be restricted in his power of removal, after the appointment of the members of the board of health was taken away from him, as it was, by the act of 13th *March* last, whereby the act of 17th *March*, 1806, was continued.

By the constitution of the Commonwealth, (art. 2. sect. 8.) it is provided, " that the Governor shall appoint all officers, " whose offices are established by this constitution, or shall be " established by law, and whose appointments are not here- " in otherwise provided for." The constitution is silent as to the *removal* of officers, yet it has been generally supposed, that the power of removal rested with the Governor, except in those cases where the tenure, was during good behaviour. But it has never been ascertained, nor is it easy to ascertain, to what offices this power of appointment extends. I speak of offices created by law, *since* the making of the constitution. The word *office*, is of very vague and indefinite import. Every thing concerning the administration of justice, or the *general interests of society*, may be supposed to be within the meaning of the constitution, especially, if fees, or emoluments, are annexed to the office. But there are matters of temporary and local concern, which, although comprehended in the term *office*, have not been thought to be embraced by the constitution. And when offices of that kind have been created, the legislature have sometimes made the appointment in the law which created them, sometimes given the appointment to others than the Governor, and sometimes given the power of removal to others, although the appointment was left to the Governor. The officers of whom I am speaking, are often described in acts of assembly, by the name of *commissioners*. Such, for instance, as are employed in the laying out of roads and canals, and other works of a public nature. Yet all these perform a *duty*, or in other

1817.

The Commonwealth.
*ex rel.*
LEHMAN
*v.*
SUTHERLAND.

1817.

The Commonwealth
ex rel.
LEHMAN
v.
SUTHERLAND.

words exercise *an office*. So likewise, officers within the limits of a *corporation*, are generally appointed *by the corporation*, unless they concern the administration of justice. In order to discover in what light this office of *physician to the board of health* has been viewed, I have traced the health laws from their origin, and am satisfied that it has been considered, and justly considered, as an office under the controul of the legislature, and subject to their modification, as to appointment, duration, and removal. The present system of health laws took its origin from the melancholy pestilence in the year 1793. The first law bears date the 22d *April*, 1794, and in all no less than eleven acts have been passed. The subject was new, and the first essays were found, by experience, to be very imperfect. The principal officers have undergone various changes, as to their *names*, their *number*, and their *appointment*. They were called, at first *inspectors*, then *managers*, and last *the board of health*. At first, they were unincorporated, afterwards incorporated. Their numbers were, first 24, then 12, afterwards 5, and now 11. At first, they served gratuitously, afterwards with a salary, and now again they receive no compensation. Until the year 1803, they were *elected* by the mayor, or recorder and aldermen of *Philadelphia*, and justices of the peace of the *Northern Liberties* and district of *Southwark*. From 1803, to the present year, they were *appointed by the Governor*. At present, they are chosen, six by the select and common councils of *Philadelphia;* three by the commissioners of the *Northern Liberties* and *Penn Township;* and two by the commissioners of *Southwark* and *Moyamensing*. This body, or board, whether incorporated or not, were certainly, strictly speaking, *officers*, and yet, during the greater part of their time, *they have not been appointed by the Governor.* And they have always had under them, certain necessary, inferior, *officers*, (I do not mean physicians,) whom they have *appointed*, and *removed* at pleasure. As to physicians, the immediate subject of inquiry, although, I believe, they have been uniformly *appointed* by the Governor, yet they have undergone great changes as to *pay* and *removal*. They have sometimes received fees, sometimes stated salaries, and sometimes both. They have been subject to *removal*, sometimes by the Board alone, and sometimes by the Governor, at the request of the Board. Sometimes it was at the Governor's option, whether to com-

1817.

The Commonwealth
ex rel.
LEHMAN
v.
SUTHERLAND.

ply or not, with the request of the Board, and sometimes the request was compulsory. By the act of 23d *September*, 1794, a majority of a quorum of the board of inspectors, might *suspend* or *remove*, the *resident* and *consulting physicians*, and appoint others in their places. By the act of 4th *April*, 1798, when seven of the board of health complain of the physicians to the Governor, and specify the causes of complaint, the Governor *shall* remove them, unless the causes are *manifestly frivolous* and *insufficient*, and appoint others in their places. And by the act of the 1st *April*, 1803, which is exactly similar to that of the 17th *March*, 1806, they *may* be removed by the Governor, at the request of a majority of the members of the board of health. Thus it appears clearly, that the office of physician has been considered, in point of *removal*, as completely subject to the legislative power, and there can be no doubt of the intent of the legislature in the act of 1806—when it is said, that the Governor *may* remove, at the request of a majority of the board, it is meant, that he *shall not* remove without their request.

But, it is yet to be inquired, for what period physicians, appointed under the law of 1806, held. It will be recollected, that that law was temporary, and has been continued, from time to time, by several acts. It appears to me, then, that an appointment, made in the year 1806, would have given to the officer a right, of which the Governor could not deprive him, without the request of a majority of the board of health, *during the time for which that law was originally made to last*, viz. *five years, and from thence to the end of the next session.* So, when the act of 1806 was continued for four years, by the act of 25th *March*, 1813, an appointment made, previous to the 25th *March*, 1817, vested an interest, which would endure till the 25th *March*, 1817, unless a majority of the board of health should request a removal. My reason for this construction is, that if the law, giving continuance to the prior temporary law, should, by implication, give continuance to the *officer* appointed under the fir t law, it would, in effect, amount to an *appointment of the officer*, during the period of the continuation ; and there is nothing in any part of the health system, which looks like an intent to take the *appointment* from the governor. There are particular reasons for this construction, when we consider the great fluctuations which have taken place in the manner of appointing

the *board of health.* When Dr. *Sutherland* received his commission, the board consisted of *five* members,' *appointed by the Governor.* But, by the act which made the last continuation, an entire change took place. The board was to consist of *eleven* members, *not appointed by the Governor.* There is another reason for supposing, that the legislature intended a *new appointment* of physicians, at every new continuance. In the continuance laws, there is often a great alteration in the compensation of the physicians, greater than probably would have been made, unless there was to be a new appointment. Would not the Governor have been justified in giving to Dr. *Sutherland* a commission *to hold until the* 25th *March,* 1817, *unless he should be sooner removed according to law?* It would seem to me, that such a commission would have been exactly in the spirit of the existing law. Upon these principles, the case will stand thus. Doctor *Sutherland* could not be removed without the request of the board of health, before the 25th *March* last. After that time, the Governor might make a new appointment. But the commission of Dr. *Lehman* bears date the 14th *March* last; at which time the Governor had not power to appoint him. Of consequence, he has shewn no right to the office; and the information in nature of a *quo warranto,* being, in substance, a civil proceeding for the recovery of the office, it ought not to be granted at his relation. I am, therefore, of opinion, that the rule should be discharged.

GIBSON J. concurred.

DUNCAN J. This is an application for an information in the nature of a *quo warranto,* against Dr. *Joel B. Sutherland,* to shew by what authority he exercises the authority of Lazaretto physician. It is made on behalf of Dr. *George F. Lehman,* claiming the office, and complaining of the intrusion of Dr. *Sutherland.*

To trace the constitution of the board of health from its origin; to notice the changes and variations which have been made from time to time by the legislature, as experience directed improvements, may not be without its use; for though many of the laws may have expired, or have been repealed, they are statutes in *pari materia;* to be taken into view, in forming an opinion on the new system established by act of 13th *March,* 1817, and now in operation.

1817.

The Commonwealth
ex rel.
LEHMAN
v.
SUTHERLAND.

The first establishment of a health office was by act of 22d April, 1794, 3 *Dall. St. Laws*, 553. A resident physician, consulting physician, and health officer, were to be appointed by the Governor; the inspectors of the health office, by the mayor or recorder and aldermen of the city, and the justices of the peace of the *Northern Liberties* and district of *Southwark* respectively; the compensation to the consulting and resident physician, were fees for certain services. By act of 23d *September*, 1794, 3 *Dall. St. Laws*, 641, the inspectors may suspend or remove from office, for reasonable cause, the visiting or resident physician, and appoint another or others in his place. By act of 4th *April*, 1798, 4 *Dall. St. Laws*, 287, a board of managers of the marine and city hospital was incorporated; the managers to be appointed by the mayor or recorder and aldermen, and certain justices of the peace of the *Liberties* and *District*, annually. It contained this provision; That whenever any seven of the board of managers should deem the removal of any of the physicians and health officers necessary to the public health, and shall represent the same to the Governor, specifying the grounds, the Governor shall, thereupon, unless such grounds are manifestly frivolous and insufficient, remove such officer, and appoint another in his stead. By the act of 4th *April*, 1799, a new board of health is incorporated by the name of the board of health, to be appointed in a special manner by the local authorities; the Governor is authorised to appoint a resident physician; certain fees are allowed to the officer. By the act of 11th *April*, 1803, a board of health is established; the Governor is to appoint the members; the salary is 400 dollars; the Governor is to remove on complaint of a majority of the board of health. The act of 17th *March*, 1806, repeals all former laws; incorporates a board of health; the Governor annually to commission and appoint five persons who are to constitute this board; the salary 500 dollars a year; the Governor empowered to appoint Lazaretto physician, port physician, health officer, and quarantine master, all of whom are placed under the direction and controul of the board; the compensation of Lazaretto physician, three dollars for every vessel examined, with certain privileges; the Lazaretto physician removeable by the Governor on the request of a majority of the members of the board of health. On the 25th *March*, 1813, the preceding act was extended

1817.
*The Commonwealth ex rel. Lehman v. Sutherland.*

1817.

The Com-
monwealth
ex rel.
LEHMAN
v.
SUTHERLAND.

for four years ; the Lazaretto physician to receive a salary of 1300 dollars. By the act of 7th *March,* 1813, the acts of 1806, 1812, and 1813, are continued for three years from the 25th *March;* the members increased to eleven, to serve without compensation ; to be appointed, six by the select and common council, three by the commissioners of the *Northern Liberties* and *Penn Township,* and two by the commissioners of *Southwark* and *Moyamensing;* two dollars allowed the Lazaretto physician for examining certain vessels, in addition to his salary.

Dr. *Sutherland* is in possession under a commission of 1st *May,* 1816, to hold the office until the commission and appointment should be by the Governor or other lawful authority superseded. Dr. *Lehman* claims the possession under a commission of 14th *March,* 1817, of like tenor.

The constitution of this State provides, that the Governor shall appoint all officers whose offices are established by the constitution, or shall be established by law, and whose appointments are not by the constitution otherwise provided for. All commissions shall be in the name of the Commonwealth, under its seal, signed by the Governor. To attempt a definition of those officers intended by the framers of the constitution, who are thus exclusively to be appointed and commissioned by the Governor, would be anticipating matters not necessary to this decision. In a series of legislation from its formation to the present day, it has not been considered as embracing all appointments to offices created by law ; in the several laws on this very subject it has not been so considered. By the act of *September,* 1794, the members of the board of health may not only suspend and remove the resident physician, but appoint another in his place ; and as they had controul over him by law, it would seem expedient, that so long as he possessed their confidence he should not be removed. The power of appointment to a new office, without commission from the Governor, in the law creating the office, has frequently been exercised. As in the act of 4th *April,* 1794, offering compensation to *Pennsylvania* claimants for lands, within the seventeen townships in *Luzerne* county. The commissioners are named and appointed in the act, without any intervention of the Governor, except in his legislative capacity, approving the act. These commissioners were in the nature of judicial officers, exer-

1817.

The Commo. wealth
ex rel.
LEHMAN
v.
SUTHERLAND.

cising important and discretionary powers, and judicial functions; and although the constitutionality of many of the provisions of that act has been called in question, yet this has never formed an objection. The enumeration of such appointments would be endless. It would be too much now to pronounce, that all this was usurpation on the constitutional rights of the Governor, forbidden by the constitution, and void. In most cases of local appointments, they are made by the people or by certain bodies of men authorised by the law creating the office; as sheriffs elected by the people under the constitution, although commissioned by the Governor; county treasurers by the commissioners; inspectors and managers of the board of health by the local authorities; and the very members of the new board of health to be so appointed.

That the legislature, possessing this power of appointment to offices local in their nature, created by law, submitting to the Governor the appointments, may restrain the power of removal, may modify the tenure of the office, cannot, I think, be justly questioned. The power granted by the constitution to the Governor to appoint, necessarily carries with it, in all offices where the tenure is during pleasure, the incidental power of removal. But, where the duration of the office is fixed by the law creating it, and where there is a provision for removal during the time limited for the continuance in office, it would seem to me that the officer is not removeable, except in the manner prescribed by the law. This incidental power of removal is not expressly given by the constitution, and it extends only by necessary implication to such offices as the Governor possesses exclusively the power of appointment to under the constitution, or the power is granted to him by the law creating the office, where there is no restriction on the power of removal.

The several tenures of commissions will arise under the constitution, or be founded on particular laws creating new offices not provided for by the constitution. 1. Judicial offices in the Courts established by the constitution during good behaviour. 2. Offices for a limited time, depending on good behaviour, as Secretary of the Commonwealth. 3. For a limited time, as militia officers, and all others created by law, where the appointment is for a limited time. 4. During pleasure. 5. For a limited time, removeable on the request

1817.

The Com-
monwealth
ex rel.
LEHMAN
v.
SUTHERLAND.

of those who have the superintendance of the duties to be performed; rendering the officer removeable by the provisions of the act creating the offices by that mode. Such officer is only removable in the manner prescribed, during the period assigned by the law for the continuance in office, during the existence of the law.

I take the appointment of the Lazaretto physician to be of the latter description, and I consider his appointment as commensurate with the continuance of the law, where no other time is fixed; subject only to removal during all that time in the manner prescribed by the law.

Although the act of 1813, in many of its provisions, is continued by that of 1817, yet the alterations are so very important that it appears to be the creation of a new body, not the renovation of an old one; not the prolongation of life to a body about to expire. The very constitution of the board of health was to be changed: this was the great, if not the sole object of the law. The creation of a new body was contemplated by the legislature; the calling into existence a new body of their own creation. The old one was suffered to exist during all the period assigned for its life by the power which created it: the new one was to arise from its ashes, on its dissolution. A new order of things was to take place. If the changes had been merely formal; if it had been simply a continuance of the former law, another question would have been presented to the consideration of the Court: for, 1st. The very mode of appointment of the members of the corporation is totally changed; it is transferred from the state government to the local authorities: 2d. The members are to act without compensation: 3d. The increase of members: 4th. No limitation as to eligibility. The right of the officer depends not only on the law, but the appointment of the Governor. It is a commission continuing until the law under which it is made expires. For though the act of 1813 is continued, it is with such great and essential alterations of the whole fabric of the corporation as to render a new appointment necessary by the Governor. It may be proper to observe, that the commission of Dr. *Sutherland* may be considered as in perfect consistency with the law, " super-" seded by the Governor, or other lawful authority;" that is, superseded by him, on the request of a majority of the members of the board of health.

I am, therefore, of opinion that Dr. *Sutherland* continued Lazaretto physician until the 25th of *March;* but am of opinion that the information cannot be granted on the application of Dr. *Lehman.* If the conclusions I have drawn are in any degree correct, Dr. *Sutherland* remained the officer till the law of 1813 expired by its original limitation. The office was full until this time : the Governor could not appoint until the 25th *March*, 1817 ; for no new appointment could be made before, unless Dr. *Sutherland* had been removed, on the request of a majority of the board of health. This could not be an appointment under the new law ; for the time had not arrived when this new corporation was to go into operation. It could not be under the old law ; for the office was full : and if it were not, it would expire with that law. It is justly to be doubted whether the Governor can appoint to any office, while the office is full, and the officer is not removeable by the Governor. It is questionable whether he can appoint to any office, where the act provides that it shall not take effect until a future day, mentioned in the act, unless the power is given by the law ; as, in this way, he might appoint to office, when such office had not existence until after the expiration of his own office. It, therefore, would appear to be necessary to the constitution of a good appointment under the act of 1813, that there should be a vacancy in the office, and, if under the act of 1817, the period should have arrived when the new corporation was to take effect. This principle is established by the Supreme Court of *Massachusetts*, in *The Commonwealth* v. *Fowler*, 10 *Mass. Rep.* 290, where it was determined, that, where the legislature had erected a new county, and in the act had provided that it should not take effect until a future day, mentioned in the law, an appointment by the executive, before that day, was void. It follows that this application, being a private one, by an individual who has sustained no injury by the intrusion of Dr. *Sutherland* into this office, to which neither have a right, cannot be granted. It is not made by any one acting *ex officio* on behalf of the Commonwealth, but it is made by an individual who has no right, complaining of the usurpation of his office, and seeking redress for the intrusion.

Motion refused.