## CHARLES G. KEENAN v. JOHN C. PERRY.

The Act of the 28th of August, 1856, (O. & W. Dig., Art. 1362,) was not repealed by the Act of the 5th of February, 1858, (O. & W. Dig., Art. 1366,) nor was an appointment to the office of superintendent of the lunatic asylum under the former act, superseded by the latter.

These statutes were enacted, manifestly, *in pari materia*, and must stand, and be construed together, as one act, as respects the office of superintendent.

The manifest intention of the legislature, in the latter act, was, not to create a new, but to regulate an existing office; and there is nothing in its provisions to lead to the conclusion, that it was their intention to act upon the incumbent of the office of superintendent, appointed under the former act, either to continue or determine his appointment.

The continuation in office of the superintendent of the lunatic asylum, appointed under the Act of 1856, was determinable at the pleasure of the governor; that law providing for the appointment, by the governor, but not prescribing the duration of the office, the power of removal is incident to the power of appointment.

The Act of 1858, expressly recognises the power of removal by the governor, for certain enumerated causes, and in order that the exercise of such power, by the executive, may be effective and conclusive, it is not necessary that he should assign the causes, or manifest, by any official record, or otherwise, the particular cause or causes, upon which he acted. The law makes him the sole judge of the existence of the causes of removal.

No principle is more firmly established, than that, where a special and exclusive authority is delegated to any tribunal, or officer of the government, and no mode of revising his decision, by appeal, or otherwise, is provided by law, his action is final and conclusive, of the matter submitted to his decision.

REHEARING. Where the power of appointment is exclusively vested in any tribunal, or department of the government, and the office is held at the discretion of the tribunal, the mere appointment of a successor is, *per se*, a removal of the prior incumbent, so far, at least, as the right to the office is concerned.

APPEAL from Travis. Tried below before the Hon. Alexander W. Terrell.

This was a suit brought by John C. Perry against Charles G. Keenan and James B. Shaw, comptroller of public accounts, for a restoration to the office of superintendent of the state lunatic asylum, which he had lately held; alleging that Keenan had been then recently appointed thereto, and had, by virtue thereof,

usurped its privileges; that the defendant, Shaw, refused to pay to him the salary to which he was entitled; that the appointment of Keenan was void; that his own term of office had not expired, and that he had in no manner been removed from the said office.

The petition prayed, that Keenan might restore to him the office aforesaid, of which he had possessed himself, and that Shaw might be required to show cause why a peremptory *mandamus* should not issue, commanding him to draw a warrant for his salary.

The plaintiff was appointed and commissioned to the office, by the governor of the state, on the 27th day of May, 1857, for the term of four years, and he continued to discharge its duties, until after the passage of the Act of the 5th of February, 1858, entitled, " An Act to provide for the organization of the State Lunatic Asylum, and for the care and maintenance of the Insane." After the passage of that act, to wit, on the 5th day of February, 1858, he executed the bond required by that law, which was duly approved; and he possessed the qualification of being a married man. Keenan was appointed to the said office, by the governor, on the 13th of February, 1858, gave the bond required by the Act of February 5th, 1858, and took possession of the office, about the date of his appointment. The plaintiff was verbally notified, by the governor, of the appointment of Keenan, and at the same time and manner, that he was removed. No cause therefor was then or had since been assigned.

Upon this state of facts, a jury was waived, and the cause submitted to the court for decision; judgment was rendered for the plaintiff, restoring him to the office aforesaid, and a writ of *mandamus* was awarded for that purpose, to the defendant, Keenan, and also to require the defendant, Shaw, to draw in favor of the plaintiff, the warrant on the treasury, as prayed for.

The defendant, Keenan, appealed to the Supreme Court.

*Oldham & White*, for the appellant.

*John W. Harris*, for the appellee.

*W. Alexander*, also for the appellee.—There can be no legal appointment, where there is no vacancy. (Hill v. The State, 1 Ala. Rep. 559.) The office of superintendent of the state lunatic asylum, was not vacant on the 15th of February, 1858, when, it is contended, Dr. Keenan was appointed. Dr. Perry was then the incumbent. Being in office, by appointment under the Act of August 28th, 1856, and possessing all of the requisites. for continuing to hold the office, under the Act of February 5th, 1858, he had given the bond with security it prescribed, which had been duly approved, and had continued to discharge the duties of the office, until illegally ousted—not removed according to law. No presumption can be indulged in favor of the governor and against Dr. Perry. (Bowman v. Slifer, 25 Penn. St. Rep. 29; Auditor v. Howdin, 8 B. Mon. Rep. 672.)

The Act entitled, "An Act for the erection and support of a Lunatic Asylum," of August 28th, 1856, (Acts of 1856, p. 60,) was not repealed and superseded by an act entitled, "An Act to provide for the organization of the State Lunatic Asylum, and for the care and maintenance of the Insane," of February 5th, 1858. (Acts of 1858, p. 114. Neill v. Keese, 5 Texas Rep. 23.) Both acts are in furtherance of the same object, the later act being cumulative of the earlier. They are not inconsistent, or conflicting with each other.

The Act of 1856, contains provisions which are not to be found in the Act of 1858. It makes an appropriation of $50,000 for a building. (Sec. 1.) It provides for the appointment of a superintendent. (Sec. 4.) It fixes the salary of the superintendent, and appropriates $10,000, for the expenses of the asylum, until the meeting of the next legislature. (Sec. 4.) If the Act of 1856, be repealed, could a building, if begun, be completed? could a superintendent, in case of a vacancy, be appointed? If appointed, could he draw a salary? The position that the Act of 1856, is repealed, is inconsistent with the claim asserted by the appellant. If correct, the appropriation for building, the appointing power, and the salary, are gone. Dr. Keenan could not have been appointed. It is evidently an afterthought, or,

else, why did the governor notify Dr. Perry? The power of appointing a superintendent, is not inherent in the office of governor; it is solely conferred by the 4th section of the Act of 1856. The first section of the Act of 1858, invests him with the further power to appoint five managers. No further appointing power is conferred by that act. *Expressio unius exclusio est alterius.* (Broom's Legal Maxims, 515, *et seq.*; Bryan v. Sundberg, 5 Texas Rep. 418.)

The Acts of 1856 and 1858, are *in pari materia.* (Sedgw. on Const. 247; Smith's Com. 757, 770.) The removing power of the governor, (as to the superintendent,) is not general. It is special, and is limited to one of three specified causes; incompetency, refusal to discharge any official duties, and misconduct. The record shows, that Dr. Perry was not removed for any of these causes, or, in other words, that he has never been legally removed at all. (Bryan v. Sundberg, 5 Texas Rep. 418.) Where a governor, who is vested with only a special and limited power of removal for certain causes, exceeds the power conferred upon him by law, his action can be attacked collaterally. Such action is not a judgment, (Lewis v. Lewis, 9 Missouri Rep. 183;) and is void. (Thomas v. Burrus, 23 Miss. (1 Cush.) R. 550; Constitution of the State of Texas, Art. II. § 1; Id. Art. V. § 10; Id. Art. I. § 16; Commonwealth v. Shaver, 3 Watts & Serg. Rep. 340.)

Dr. Perry has neither been legislated out of office, nor removed. As no notice of appeal was given, and no appeal was perfectly by the comptroller, the judgment of the court below, deciding that Dr. Perry is the incumbent of the office of superintendent of the state lunatic asylum, and is entitled to recover the salary appertaining thereto, is conclusive, as to him. (Lacy v. Williams, 8 Texas Rep. 182; Burr v. Lewis, 6 Id. 76; Herndon v. Robertson, 15 Id. 604; Herndon v. Bremond, 17 Id. 432; Sartain v. Hamilton, 14 Id. 348; Hendrick v. Cannon, 5 Id. 248.)

WHEELER, C. J.—We are of opinion, that the Act of the 28th

of August, 1856, (O. & W. Dig., Art 1362,) was not repealed, nor the appointment of the appellee to the office of superintendent of the lunatic asylum superseded, by the Act of the 5th of February, 1858. (Id., Art. 1366.) The latter Act does not create the office, or provide a salary for the incumbent; but the former does. The latter annexes additional qualifications, and prescribes the duration and duties of the office. The former undertakes to create, and the latter only to regulate, the office. They were enacted manifestly *in pari materia*, and must stand and be construed together, as one act, as respects the office of superintendent. Both must be looked to for the law creating the office, and fixing the salary, and prescribing the duties of the officer.

It it be admitted, that the governor might have appointed a superintendent, and the managers have determined his salary, under the Act of 1858, though the office had not been before created ; yet the manner in which the subject was treated by the legislature, in the latter act, seems very plainly to manifest their understanding, that they were not creating an office theretofore unknown to the law. The manifest intention was, not to create a new, but to regulate an existing office. Had not that been the legislative understanding of the matter, it is not probable that the act would have been silent upon subjects of so much importance, as the manner of electing the officer, and the salary which should be annexed to the office. It is not probable that, while providing, with so much particularity and care, for the complete organization and government of the institution, in the Act of 1858, the legislature would have entirely omitted matters so important as these. It is not at all probable, that they would have left to the managers, the fixing of the salary of the most important office connected with the institution. The managers were empowered " to prescribe the duties of all persons employed about the asylum, and to determine their salaries, except in cases specially provided for by law." But the duties of the superintendent were prescribed by law, and so also was his salary; and hence no further provision upon that subject was deemed

necessary. The managers were empowered to exercise authority over the mere employees about the Asylum; could prescribe their duties and salaries, and discharge them at pleasure. But they were not permitted to exercise any such control over the superintendent. (O. & W. Dig., Art. 1367.) His appointment, salary, duties, and removal from office, were otherwise provided for by law; in part by the Act of 1856, and in part by that of 1858. Both must be looked to, for provisions embracing the whole subject; both, we think, had in view, in treating of superintendence, the same office. This is sufficiently apparent by reference to their respective provisions on the subject.

The appellee was appointed under the Act of 1856, and was in office when the Act of 1858 was passed. We see nothing in its provisions, to lead to the conclusion, that it was the intention of the legislature to act upon the incumbent, either to continue or determine his appointment. That subject does not appear to have engaged their attention. Under his appointment, for aught that appears, he might have held the office for a period of four years, unless sooner removed. The law under which he was appointed, did not prescribe the duration of his office; but that was the limit fixed by the Constitution, which it could not exceed. (Constitution, Art. 7, § 10.)

The law (of 1856) was silent with respect to the power of removal from the office. It simply provided for the appointment. But in the absence of any constitutional or statutory provision, it would seem, (it has been said,) to be a sound and necessary rule, to consider the power of removal, as incident to the power of appointment. It was so considered by the Supreme Court of the United States, in the case Ex parte Hennen, 13 Peters, Rep. 259. In the early history of the government, the power of the federal executive to remove officers, appointed with the concurrence of the senate, was much discussed. The great question was, whether the power of removal resided in the president alone, or with the concurrence of the senate, both constituting the appointing power. The power of the president and senate, jointly, to remove, where the tenure of the office was not fixed by the

Constitution, was admitted, and the principle fully recognised, that the power of removal was incident to the power of appointment.

The same principle was asserted by Chief Justice TILGHMAN, of the power of appointment, conferred by the legislature upon the governor. Where the duration of the office is not fixed by law, and there is no provision for removal, during the time limited for the continuance in office, the power of appointment (he considered,) necessarily carries with it the incidental power of removal. (3 Serg. & Rawle, 154.)

Such, it is believed, is the practical construction of the power in the several states, as well as under the Constitution of the United States. When the tenure of the office is not fixed by the Constitution, nor by the law, and there is no provision for removal from office, its tenure is during pleasure. Such was the tenure of office of the appellee, under the law of his appointment. His continuance in office was determinable at pleasure, by the governor.

The Act of 1858, treats the office of superintendent as already existing, but contains no allusion to the incumbent. It prescribes the qualifications and duties, and the tenure of office, and provides for the removal from office. And it is insisted for the appellant, with some apparent reason, that its provisions respecting the tenure of office, and the removal from office, were designed to operate only upon those who should be appointed to the office under its provisions; that it was prospective in its operation, and did not affect the incumbent; but that he continued to hold by the same tenure, and subject to removal at pleasure, in the same manner after, as before the passage of the Act of 1858.

We deem it unnecessary to examine this argument. The Act of 1858 does not take away the power of removal from the governor, but expressly recognises its continued existence, providing that the superintendent "shall continue in office for the term of four years, from the time of his appointment, unless sooner removed by the governor, for incompetency, refusal to discharge

any of his duties, or for any misconduct on his part, which might render it improper for him to continue longer in office."

There can be no question of the power of the governor to remove, for the specified causes. He did remove the appellee, and appoint the appellant, as his successor. But it is insisted for the appellee, that the removal was not operative and effectual, because the governor did not assign the cause or causes of the removal. The answer to this is, that the law did not require him to assign the causes ; or to manifest, by any official record, or otherwise, the particular cause or causes upon which he acted. The law makes no provision for ascertaining the existence of the causes, or for revising the action of the governor, by any other authority or tribunal. In thus conferring the power of removal, to be exercised by him, without the concurrence of any other authority, to ascertain the existence of the causes, by judicial inquiry, or otherwise, and without giving any power of revising his decision, the law made him, necessarily, the sole judge of the existence of the causes, and his decision is, necessarily, final and irreversible.

No principle is more firmly establised, than that where a special and exclusive authority, is delegated to any tribunal or officer of the government, and no mode of revising his decision, by appeal, or otherwise, is provided by law, his action is final and conclusive, of the matter submitted to his decision. This principle, applies to all officers and tribunals, to whom, or to which, a special authority is thus delegated; and not less to the chief executive officer of the state, than to other officers and tribunals, constituted with a special and limited, but exclusive authority.

As no court, or tribunal, is clothed with authority by the law, to revise the action of the governor, in removing the officer, and his decision as to the existence of the specified causes, is not elsewhere examinable; it is not perceived, what useful purpose would be subserved, by assigning the particular cause, or causes, upon which he acted. The authority to require it, would imply a power of revision, which is not given by the law. But it will

suffice to say, the law does not require it, and the courts have not the authority, to prescribe to the other departments of the government, duties not enjoined upon them by the laws under which they act.

Our conclusion is, that the governor had the authority, to remove the appellee from office, for the specified causes, and that his action must be deemed conclusive, as to the existence of cause, in so far as the right to the office is concerned. Whether correct or not, there is no authority given to revise it, and it consequently is irreversible by the District Court, or by this court.

The comptroller did not appeal; but that cannot deprive the defendant, who did appeal, of his right to have the judgment revised, and his rights involved in the litigation, adjudged to him.

It would seem, that the proceeding by *mandamus*, against the comptroller, was not maintainable. (Commissioner General Land Office v. Smith, 5 Texas Rep. 471; Auditorial Board v. Aules, 15 Id. 72, 75; United States v. Guthrie, 17 How. 284.) But as the case as to the *mandamus*, is not now before the court, that subject need not be considered.

We are of opinion, that the judgment be reversed, and such judgment be here rendered, as the court below ought to have rendered; that is, that the appellant be entitled to exercise the office of superintendent of the lunatic asylum, under his appointment, and to the rights, privileges, and emoluments of that office.

Reversed and rendered.


A rehearing of the cause was subsequently granted by the court, on application of the counsel for the appellee.


WHEELER, C. J., on rehearing.—If we were mistaken, (which is not perceived,) in supposing the legislature did not intend by the Act of 1858, to act directly upon the incumbent of the office in question, it would not affect our conclusion. Because the act expressly recognises the power of the governor to remove him,

for the specified causes; and the only question is, whether he has exercised the power.

In so far as concerns the fact of removal, or what shall be evidence of the exercise of the power, it is not perceived that it can make any difference, whether the power exists, as an incident to the power of appointment, unqualified, as under the Act of 1856, or as qualified by the expression of the causes for which it may be exercised, by the Act of 1858. The power still resides in the governor, and there is no prescribed form to be observed in its exercise. No public declaration of the fact is prescribed, and on general principles, it would seem, that no other manifestation of the exercise of the power is necessary, than the making of a new appointment. The new appointment, is a revocation of the former appointment, and necessarily, a removal of the prior incumbent. There cannot be two incumbents of the office at the same time. The governor has the exclusive power of appointment and removal; there is no mode prescribed by law for the exercise of the power; a new appointment, is necessarily a revocation of the first, and a removal of the incumbent. This seems clear on principle, and it has been expressly so adjudged, both in England and in this country.

Thus, in Smythe v. Latham, 9 Bing. 672, the office in question was that of paymaster, appointed under an act of parliament. The court said, it was not an ancient common law office, the tenure of which is to be governed by usage, but by the legal construction of the act of parliament, the tenure of the office was during pleasure; and that the new appointment was, of itself, a revocation of the first.

The same principle was declared and applied, by the Supreme Court of the United States, in the case before cited, *Ex parte Hennen*, 13 Pet. 230. The court there said: " The power vested in the court, (to appoint a clerk,) was a continuing power; and the mere appointment of a successor, would, *per se*, be a removal of the prior incumbent, so far, at least, as his rights were concerned. How far the rights of third persons may be affected, is unnecessary now to consider. There could

not be two clerks at the same time. The offices would be inconsistent with each other, and could not stand together. If the power to appoint a clerk, was vested exclusively in the District Court, and the office was held, at the discretion of the court, as we think it was; then this court can have no control over the appointment, or removal, or entertain any inquiry into the grounds of removal. If the judge is chargeable with any abuse of his power, this is not the tribunal to which he is amenable." (Id. 261.) The principle is fully maintained, that where the power of appointment is exclusively vested in any tribunal, or department of the government, and the office is held at the discretion of the tribunal, the mere appointment of a successor, is, *per se*, a removal of the prior incumbent, so far, at least, as the right to the office is concerned. The law was silent, as to the power of removal. But "all offices, (the court say,) the tenure of which is not fixed by the constitution, or limited by law, must be held, either during good behaviour, or, (which is the same thing, in contemplation of law,) during the life of the incumbent; or must be held at the will and discretion of some department of the government, and subject to removal at pleasure."

In the present case, the office, though its tenure is limited by law, is held at the discretion of the governor. The power of appointment and removal, is exclusively vested in him; and the office, consequently, is necessarily held at his discretion. It is not intended that he shall have or exercise, a capricious and arbitrary discretion; but a discretion governed by law, and to be exercised, only in the cases provided by law. Still, the office is held at his discretion, not subject to revision, but subject only to the rules prescribed by law, for his government; and if, in its exercise, he should be chargeable with an abuse of his power, as the court said, in the case just cited, this is not the tribunal to which he is amenable. The court has no control over the appointment or removal. The appellant was appointed and commissioned, and notice was given by the governor, to the appellee,

of his removal, and the appointment of the appellant in his place, which was sufficient, as to the fact of removal.

The power is not questioned; and it is admitted that the governor is the sole judge of the causes, and that his decision cannot be revised. It is sufficient, according to the argument, that one of the prescribed causes, in his judgment, exists, to authorize his action; and whether rightly, or not, cannot be judicially examined. If cause exist, in his mind, though it have no existence, in point of fact, it is admitted it is conclusive, in so far as concerns judicial inquiry. Still, it is insisted, he must manifest the existence of the cause, in his judgment, by assigning it, in order to enable him to exercise the power of removal; or, the new appointee must prove it, to show himself entitled to the office. Whether, or not, in the judgment of the governor, there was cause, may be supposed scarcely a fit subject of judicial investigation. If the motives that prompted his official acts, are examinable, it must be elsewhere than in a judicial tribunal. But the obvious answer to the argument, that he must assign the cause of the removal, is, that the statute does not require it. It is only said, that the officer shall continue in office, during the prescribed period, unless sooner removed by the governor, for the specified causes; not that he shall assign the cause. If that had been intended as a condition precedent to the exercise of the power, or as a limitation, or restriction upon its exercise, it would have been easy to have so expressed it. The argument seems to proceed upon the supposition, that the court can annex a condition, to the exercise of the power, which the legislature did not see proper to annex. It is said, the governor must assign the cause of the removal, because he is required to keep a record of his official acts. But it is to be observed, that the *cause* is not the *act* of removal. He may keep a record of his acts, without spreading upon the record, the causes which induced them; and even if that duty were neglected, it should not, it would seem, have the effect to deprive third persons of their legal rights.

When the governor exercises the power of removal, he neces-

sarily decides that, in his judgment, one of the statutory causes exists. This we must suppose, unless we suppose him to have acted in manifest disregard of the law and of his duty. But as he is made the sole and exclusive judge, his decision not being elsewhere examinable, the supposition is only, that, in his judgment, there was cause—not that it should have existence in fact. There is not, therefore, any such presumption indulged as the argument supposes.

If it be thought, that to require the causes of the removal to be assigned, would operate as a salutary check to prevent the capricious or arbitrary exercise of the power, that is a consideration which may well be addressed to the law-making power. The moral restraint of a plainly prescribed legal duty already exists, and must be effectual, unless we suppose the motives to disregard the plain requirement of the law will be stronger than the sense of official duty. But, as has often been remarked, that a power may be abused, is no argument to disprove the existence of the power. The liability to abuse, may be a good reason why the exercise of a power should be carefully guarded, and placed under proper restrictions, by those by whom it is conferred; but it cannot afford the legal test by which to judge of its existence; for that we must look to the act which confers the power. In the present case, it is beyond question, that the power did exist; and we cannot say that the exercise of it was not attended by all the circumstances which the law that conferred it required.

Rehearing refused.