Staples, J.,
delivered the opinion of the court.
This is an application for a writ of prohibition-The object is to restrain the judge of the Hustings court of the city of Richmond from removing the petitioner from the office to which he was appointed on the 20th October 1875, as a judge of elections for *135 the first precinct of Jefferson ward in said city. The petitioner avers, that the appointment vested in him the right* and made it his duty under the law, to said office for the space of one year; and placed it beyond the power of any tribunal to remove him therefrom, except upon conviction by a jury, of willful neglect of bis duty, or of some corrupt conduct in the execution of his office.
It is as to the correctness of this view, we are now to speak.
Under one of the provisions of the genei’al law in regard to elections, it is made the duty of the County and Corporation courts, annually at the April terms, to appoint three competent male citizens for each voting district in their respective counties or corporations, for each voting place therein, who shall constitute judges of election, for all elections to be held in their respective districts, for the period of one year dating from their appointment. Each person so appointed, before entering upon the duties of his office, it is to take an oath that he will perform the duties of judge of election, according to law, and to the best of his ability; and that he will studiously endeavor to prevent fraud, deceit and abuse in conducting the election. Section 8, chap. 8, Code of 1873, page 155.
This is the only provision found in our laws, relating „to the qualification and appointment of judges of election, as they are termed. Uo provision is anywhere made for their removal, except that which is contained in-the 43d section of chap. 8, Code of 1873. That section declares, that if any officer, or other person on whom an election duty is cast, shall be guilty of any willful neglect of such duty, or of any corrupt conduct in the execution of the same, he shall upon conviction, be deemed guilty of misdemeanor, *136 shall be punished by fine and imprisonment, and be removed from office.
The counsel for the petitioner, in construing these statutes, have argued that the tenure of a judge of election being fixed by law. for one year, and no prov*gjon being made for his removal, except in cases of conviction, as provided in the 48d section, he cannot be removed from'office except in the mode and upon the terms prescribed by that section.
We do not propose to enter into a discussion of the much controverted proposition, that the power of removal, as‘a general rule, is a mere incident to the power of appointment. That question has, at various periods of our history, given rise to the most animated discussions. It has by turns engaged the attention of the executive, legislative and judicial departments of the government. It is discussed in the Federalist; in the celebrated case of Marbury v. Madison, 1 Cranch’s R. 137; in Ex parte Hennin, 13 Peters’ R. 230; and in many of the appellate courts of the United States. Lehman v. Sutherland, 3 Serg. & Rawle 145; Hoke v. Henderson, 4 Dev. R. 1; People v. Hill, 7 Cal. R. 97.
The question was also most carefully considered and discussed in Ex parte Bouldin, 6 Leigh 639. In that case Mr. Louis O. Bouldin was removed by the judge of the Circuit court from his office of commonwealth’s attorney without notice or any legal proceeding against him. Upon an application to the General court for a mandamus, that court unanimously held that the Circuit court having the power of appointing the commonwealth’s attorneys, had, as incident thereto, the power of removing them. It is proper to say, however, that the decision of the General court was based mainly upon the ground, that as the law then stood, the commonwealth’s attorneys did not hold their offices *137 for life, or even for years, but during the pleasure of the Circuit courts; and they might be removed by those courts without restriction or limitation. Conceding for the present that this rule- does not apply where the tenure of the office is fixed by law; that, in such case, the power of removal from office is not an incident to that of appointment, we think that the County and Corporation courts are clothed with the power of removing the judges of election with or without conviction, whenever they may deem such removal demanded by the public interests. We think that it was the purpose of the legislature to invest them with such power. Although that purpose is not expressed in so many words, yet it is manifest from a careful survey of the various statutes, past and present, relating to the subject of elections.
The statute already cited declares that the persons selected shall constitute judges of election for all elections to be held in their respective districts for the period of one year, ifow it is very obvious, that if they can be removed from office only upon conviction of the offences mentioned in the 43rd section of chapter 8, Code of 1873, in a large majority of eases, the term of office will have expired long before such •conviction can be had. The incumbent may be notoriously guilty of one or both the offences in that section mentioned; he may have been tried and convicted by the verdict of a jury, and yet judgment and execution of sentence may be delayed by courts of error •and appeal, until the term of office is ended* and a removal therefrom has ceased to be of any practical interest. During all this time of the pendency of the prosecution against him, the incumbent may insist upon exercising the functions of his office, and there is no authority that can arrest or interfere with him.
*138 It will be seen that tbe 43d section refers only to cases of willful neglect and corruption in office. It no provision for cases of gross negligence, of incapacity arising from mental or physical causes. How if the view of the court be correct, however incompetent the incumbent may be, however degraded in his conduct and habits, the government is powerless to disturb him. Even if he is guilty of the gravest criminal offences, there is no mode of closing his official career, except through the tedious instrumentalities of information or indictment, trial, conviction by a jury, and judgment of amotion from office. It is. difficult to believe, that the legislature ever anticipated or designed such a state of things in regard to-an official whose term of office is so brief, and yet where good conduct, competency, and integrity, are so essential to the freedom and purity of elections.
The provision authorizing the County and Corporation courts to appoint judges of election, was adopted 11th May 1870. At the same time, and as a part of the same general - law, the 60th section was also adopted. That section confers upon the same courts the power to remove from office all county, city and township officers elected under that act, in their counties and corporations respectively, for malfeasance, misfeasance, or gross neglect of official duty. The proceedings to be by order of, or on motion before, the proper court, upon reasonable notice to the party to be affected thereby. See Acts of 1869 and 1870,, page 78, see. 24, and sec. 60.
This would of course include sheriffs, attorneys for the commonwealth, county treasurers, and superintendents of the poor, clerks of the County and Hustings-courts, supervisors, assessors, collectors, commissioners of roads, justices of the peace and constables—of *139 ficers whose terms run from one to four years; who are elected by the people, and whose tenure is in some instances fixed by express constitutional provision.
Each and all of these officials, it is agreed, may be removed upon notice and motion; but a judge of election can only be reached by indictment, trial, and conviction by a jury. The legislature, we are told, has invested the County and Corporation courts with full control of all the county and township officers elected by the people; but has denied the same tribunals the power of removing one of their own appointees, although such removal may be imperatively required by the public interests. It is impossible to believe that a distinction so absurd, so opposed to sound policy, could ever have been intended by the legislature.
It may be asked then, why was no provision made for the removal of the judges of election, as was done with reference to the county officers. The omission to do so was certainly not accidental. As already stated, the section authorizing the appointment of judges of election, and the section authorizing the removal of county officers elected by the people, were parts of the same act; no doubt considered together and adopted at the same time. It is therefore manifest that the failure to provide, in express terms, for the removal of the judges of election, was intentional. The most reasonable inference is that no such provision was regarded as necessary. The legislature, no doubt, considered that from the character of the office and the nature of the appointment, the County or Corporation courts would respectively have the power of removing these incumbents, whenever it appeared their longer continuance was incompatible with the public interests.
These judges of election, as they are termed, are sub *140 stantially the same as the commissioners of election under the former constitution and laws. The latter also appointed by the County and Corporation courts. Before entering upon the discharge of their duties, they were required to take the same oath as the ju(jgeg e]eeti0ia now take; and they performed nearly the same duties, with certain modifications and alterations adapted to the new system of voting by ballot.
Was it ever supposed that the County and Corporation courts could not, at their pleasure, remove all or any one of these commissioners, and substitute others in their place. It is very true that the present appointees constitute judges for all elections to be held during the year; whereas the commissioners were appointed merely for the general election day and the subsequent examination and certification of the results. But by the very terms of the appointment the commissioners had as valid a claim to hold on to that appointment till the general election day, and after-wards, till the result was certified, as the present judges have for all the elections during the year. The difference between the two is simply in the duration of the tenure or time of holding, and not in the duties to be performed, or the right to discharge them. hTo law was ever passed for the removal of these commissioners; none was ever considered necessary. Like jurors, surveyors of highways and the like, they were regarded as most unfortunate, upon whom a public burden was cast, which any citizen might be required at any time to bear, as the price of his security and tranquility, under the government to which he belongs. Such appointments confer no special privileges: they do not invest the individual with the title to an office in the usual acceptation of that term.
*141 The legislature in passing a system of laws, adapted to the provisions of the present constitution, deemed it more convenient that these commissioners of tion, now styled judges, instead of being appointed biennially for each general election, should be appointed annually for all elections to be held during the year. And as no provision for the removal of the commissioners was considered necessary, it is fair to infer that none was deemed necessary for those substituted in their place.
It will be observed that the judges of election do not take any general oath of office; but at each election, before entering upon their duties, they take the oath prescribed. If one of them fails to attend the place of voting, the others may associate with them a citizen. If none of them attend, a justice of the peace or mayor may select three citizens possessed of the requisite qualifications, and the persons thus selected have all the powers, and perform the duties of judges of election.
These provisions give strength to the idea, that in the view of the legislature these judges were not officers in the ordinary acceptation of the term; but mere appointees required to perform certain duties, as the occasion arose for their performance, subject to removal by the power wffiich appointed them whenever the public interests require it.
It was argued here, that this is a dangerous power to rest in a County court; a power which may be wielded by a partizan judge for evil purposes, on the eve of an important election. The argument proves too much. It goes to show that these tribunals oüght not, in the first instance, to have been clothed with the power of appointing judges of election. There is manifestly more danger of the gratification of per *142 sonal and political preferences in the appointment of aH the judges of a large election district, than in the removal of one of them. The occasions w;j[ pe very rare upon which a County or Corporation judge will incur the hazards of public observation and censure by the removal of a competent and faithful officer, upon mere personal or political grounds. Surely a tribunal fit to be clothed with the power of removing at will any county officer elected by the people, can be safely trusted with that of removing its own appointee, the incumbent of a subordinate position. And lastly, if there is any weight in the argument, it should be addressed to the legislature, and not to the courts.
The learned counsel in this case have relied much upon the ground that the incumbent is to be removed for an alleged offence, of which he has been tried and acquitted by the verdict of a jury. According to the statement made in the petition, this acquittal was upon an indictment or indictments, charging petitioner first with fraudulently putting ballots into the ballot box; second, with willful neglect of duty, by knowingly allowing ballots to be put in the box, which should not have been put there, and with allowing others to be taken out, which ought not to have been taken out.
How the petitioner may be guiltless of each of the offences charged, and yet, as alleged by the Hustings judge, he may have been guilty of gross neglect in regard to those very ballots.
The evidence adduced on the trial may have been legally insufficient to establish the offences averred in the indictment, and yet it may have satisfied the honorable judge of the Hustings court that the petitioner is not a fit and proper person to be invested with the im *143 portant powers and privileges appertaining to such a position.
We know nothing of the merits of the case. We are not to be understood as expressing any opinion in regard to the conduct of the petitioner—that is a subject exclusively for the consideration of the Hustings court. That court being clothed with the power of removal, its decision is not the subject of review in this court.
For these reasons we think the rule of prohibition should be refused.
Prohibition reeused.