## JOHN T. DONAHUE

### *v.*

## THE COUNTY OF WILL *et al.*

*Filed at Ottawa May 14, 1881—Rehearing denied September Term, 1881.*

1. CERTIORARI—*of the return to the common law writ.* The purpose of the common law writ of *certiorari* is to have the entire record of the inferior tribunal brought before the court for inspection and judgment thereon. It requires no return of the evidence or certificate of facts outside the record, and the trial must be had upon the record alone.

2. SAME—*judgment.* If it appears from the return to the writ that the inferior tribunal had jurisdiction, and had not exceeded it, and had proceeded according to law, the writ should be quashed; but if the court finds that the inferior body had no jurisdiction, or exceeded it, or had not proceeded according to law, it should quash the proceedings shown by the return.

3. OFFICERS—*legislature may authorize county board to remove county treasurer.* Section 15 of chap. 36, Rev. Stat. 1874, which authorizes county boards to remove county treasurers from office for a neglect or refusal to render an account, or make settlement when required by law or such board, or when he is a defaulter, or is in arrears with the county, etc., is not in contravention of any constitutional provision, but is a valid law.

4. SAME—*county treasurer is not a State officer.* A county treasurer, though commissioned by the Governor, and required to collect State revenue, is not a State officer, and, therefore, sec. 15 of art. 5 of the constitution of 1870, making all State officers liable to impeachment for misdemeanors in office, has no application to such officer.

5. CONSTITUTION—*deprivation of property without due process of law.* That clause in the Bill of Rights that no person shall be deprived of life, liberty or property without due process of law, is not infringed by a statute giving the county board power to remove a county treasurer from office for nonfeasance or malfeasance in office, without a trial in a court of law, there being no such thing as title or property in a public office, within the meaning of that provision.

6. SAME—*rights of officer not protected as a contract.* The election and induction of a person into an office does not create such a contract as is protected in its obligation under the Federal and State constitutions.

7. REMOVAL FROM OFFICE—*not a judicial act.* The settling of a county treasurer's accounts by the county board, and finding that he had not settled and accounted for moneys of the county as required by law, and that he had been and still is in arrear with the county, and removing him from office, is not a judicial act, and may properly be performed by the county board.

APPEAL from the Circuit Court of Will county; the Hon. F. GOODSPEED, Judge, presiding.

Mr. GEO. S. HOUSE, for the appellant:

The action of the board was based entirely upon sec. 15, ch. 36, Hurd's Stat. 1877, which we insist is unconstitutional and void in this, that the legislature has thereby provided for the removal from office of a county treasurer in a mode and manner different from that established by the constitution, and in direct opposition to the mode and manner prescribed by the constitution.

Section 8 of article 10 of the constitution of 1870 creates the office of county treasurer, and fixes the term of his office at two years, and until his successor shall be elected and qualified. Section 15 of article 5 of the same constitution provides that the Governor and all civil officers of this State shall be liable to impeachment for any misdemeanor in office. Section 24 of article 4 of the same constitution provides for the mode and manner of impeachment, and the extent of the penalty to be inflicted upon conviction.

The constitution of this State creates the office of county treasurer, fixes his term, and establishes two modes by which the officer may be removed from his office,—the one by impeachment, the other upon conviction of a criminal offence. In the one case, the mode of procedure to be adopted is established and limited by section 24 of article 4 of the constitution. In the other case, the mode of procedure to be adopted is established and limited by the Bill of Rights. Either procedure is not inconsistent or conclusive of the other. Section 24 provides that "the party, whether convicted or acquitted, shall nevertheless be liable to prosecution, trial, judgment and punishment, according to law."

If the organic law prescribes a *term* of office, it is beyond the power of the legislature to enlarge or abridge its duration, and if the constitution has defined a mode of removing the

incumbent, that is the exclusive method. *Faut* v. *Gibbs*, 54 Miss. 396; *Newson* v. *Cook*, 44 id. 352; *Brady* v. *Howe*, 50 id. 607; *Lowe* v. *Commonwealth*, 4 Metc. (Ky.) 213; *Commonwealth* v. *Gamble*, 62 Pa. St. 422; *People ex rel.* v. *Dubois*, 23 Ill. 547; *State* v. *Douglass*, 26 Wis. 428; *Taft* v. *Adams*, 3 Gray, 130; *State* v. *McNeely*, 24 La. Ann. 20; *Field* v. *People*, 2 Scam. 79; *People* v. *Lippincott*, 67 Ill. 337.

Again, it is insisted that the section relied upon is unconstitutional and void, in that it invests the county board with the exercise of judicial power.

In order to authorize the action of the county board under this section, the county board must of necessity find some one of the causes named in the act to exist. *Clark* v. *The People*, 15 Ill. 213; *The People* v. *Higgins*, 15 id. 110.

And this of necessity involves the exercise of judicial powers which are prohibited to any body except the judiciary by article 3 of the constitution. *State ex rel.* v. *Pritchard*, 36 N. J. 101; *Creote et al.* v. *City of Chicago*, 56 Ill. 422.

Messrs. L. & P. Trumbull, also for the appellant:

The writ of *certiorari* in this case brings before the court the power of the board of supervisors of Will county to remove from - office the county treasurer of said county in any case, and if it exists in any case, whether in the manner and for the causes set forth in the return to the writ in this case.

The want of constitutional power in the legislature to vest the power of removal in the county board, is so fully presented in the argument of Mr. House, associate counsel, that nothing further need be said upon that point, or upon the failure of the legislature to confer such power on the county board, if indeed it could be done.

If such power and jurisdiction could be and has been conferred on the county board in certain cases, the record shows that the facts necessary to confer jurisdiction did not exist

in this case, and that the action of the board was arbitrary, illegal and void.

The proceedings of the board affirmatively show that the treasurer never did neglect "to render accounts and to make settlements, when required by law," with the county board. The refusal to account, if any, was not in reference to county funds, but was in respect to funds of school districts, townships, cities and the State, over which the board had no jurisdiction.

The other complaint in the "whereas" is, that the county treasurer "has been, and is, in arrears, and in divers other matters, as disclosed by the reports on file and of record by sundry committees of the board."

To whom had the treasurer been or was he in arrears? The "whereas" does not state. Unless it was to the county, the county board could not make it cause for removal. Upon this point the statute speaks. Its language reads: "is a defaulter, and in arrears with the county."

This does not give the county board jurisdiction to remove the county treasurer, if it were true that he was in arrears to the State or some other municipality than a county, and then he must be both a "defaulter and in arrears." Being "in arrears" does not necessarily imply that a person is a "defaulter." The terms are not in legal contemplation synonymous.

Mr. G. D. A. Parks, and Messrs. Hill & Dibell, for the appellees:

Offices are not held by grant or contract, nor has the incumbent a property or vested interest in them. *Connor* v. *Mayor of New York*, 1 Seld. 295; *Hyde* v. *State*, 52 Miss. 665; Bouvier's Law Dict. title, "Property;" Cooley's Const. Lim. 276.

The phrase "State officers," or "officers of this State," does not include county or other subordinate civil officers. *Ex parte Wiley*, 54 Ala. 226; *Newson* v. *Cocke*, 44 Miss. 362.

The provision of a constitution fixing the duration of a term of office applies only to regular terms, and not to vacancies or exceptional cases. *Hagarty* v. *Arnold*, 13 Kan. 382; *The People* v. *Wall*, 88 Ill. 76.

Unless limited by constitutional restriction, the General Assembly may exercise all governmental power. *The People* v. *Morgan*, 90 Ill. 561; *Richards* v. *Raymond*, 92 id. 612; *The People* v. *Wall*, 88 id. 76; Cooley's Const. Lim. 89–168; Potter's Dwarris' Statutes, 62–64.

The removal of public officers is a question of sound policy. Even a constitutional provision for deprivation of office as a part of the punishment upon conviction of crime, does not preclude the legislature from prescribing a more summary method of removal, if public interests require. *Clark* v. *The People,* 15 Ill. 213; *Dickson* v. *The People,* 17 id. 191; *Holbrook* v. *The People,* 22 id. 539.

In the absence of any constitutional provision prescribing an exclusive method or form of removal of county officers, the board of supervisors, or any other body or officer may be clothed by law with the power of removal, and of appointing, temporarily at least, a person to fill the vacancy. *State* v. *Frazier,* 48 Ga. 137; *Ex parte Wiley,* 54 Ala. 226; *Hyde* v. *State,* 52 Miss. 665; *State* v. *Prince,* 45 Wis. 610; *Kennedy* v. *McGarry,* 21 id. 496; *McGregor* v. *Supervisors,* 37 Mich. 388; *Thompson* v. *Holt,* 52 Ala. 496; *State* v. *Pidgeon,* 8 Blackf. 132.

Since the adoption of the constitution of 1870, this court has frequently recognized the power of removal of a county treasurer by the board of supervisors. *Kilgore* v. *The People,* 76 Ill. 550; *Goodhue* v. *The People,* 94 id. 52; *Cawley* v. *The People,* 95 id. 253; *Stern* v. *The People,* 96 id. 478.

A school treasurer is an "officer," within the meaning of that word in the constitution of 1870, (*School Directors* v. *The People,* 79 Ill. 511,) yet such officers are removable by

the township board of trustees almost at will.  *Holbrook* v. *Trustees*, 22 Ill. 539.

Where the power of removal is committed to a board, or other like body, the exercise of its discretion will not be reviewed by the court.  No written charges, notice or trial are necessary.  The board is the judge of the fact as well as of the method of procedure.  *The People* v. *Higgins*, 15 Ill. 110; *The People* v. *Clark*, 15 id. 213; *Wilcox* v. *The People*, 90 id. 204; *State* v. *Prince*, 45 Wis. 610; *Kennedy* v. *McGarry*, 21 id. 496; *Attorney General* v. *Brown*, 1 id. 513; *The People* v. *Stout*, 19 How. Pr. 171; *State* v. *Doherty*, 25 La. Ann. 119; *Keenan* v. *Perry*, 24 Tex. 253.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant was elected county treasurer for Will county, gave the requisite bonds, qualified, and was commissioned and acting as such in the performance of the duties of the office.  At the September meeting of the board of supervisors, which was extended into the month of October, 1880, a committee was appointed to settle with him and the sheriff. On an investigation, and, as they reported, on fair and careful settlement of appellant's accounts, he was found to be in arrears to the county for a considerable sum.  The board, on the reception of the report, on the first day of October adopted this resolution:

"WHEREAS, upon an investigation of the accounts of John T. Donahue, county treasurer, in December, 1879, he was found to be delinquent in the sum of $806.01, which he had had in his hands, as such county treasurer, for considerable more than a year, and had not accounted for or reported; and whereas, afterwards, during the sessions of a committee appointed to further investigate his accounts, he accounted for and paid over to divers officers entitled thereto the further sum of $2089.98, which he had had in his hands from one to two years, and had not accounted for or reported, and

which sum he should by law have paid to officers with whom he had settled at least once, and in most instances twice, after he received such sums, without paying them said moneys or reporting that he had the same; and whereas, afterwards, during the session of a new committee, appointed by the present board to further investigate his accounts, he has paid over to divers officers entitled thereto the further sum of $1911.58, which he had in like manner failed to pay to the officers entitled thereto, and withheld from their knowledge for a period of about two years, and during which time he had made from three to four settlements with said officers without paying over such funds so held by him, or advising such officers that he held the same; and whereas, said committee, after a further and careful examination of his books by an expert, as well as by said committee, report to this board that said Donahue is still delinquent in the further sum of $2026.56, belonging to divers officers with whom he has settled from one to four times, since he received said moneys, without paying over the same or reporting to said officers entitled thereto; and whereas, said Donahue has, in each of said cases, at first claimed that he had paid all officers entitled, and held no unreported moneys, and afterwards paid over said sums in consequence of and under the pressure of said investigation:

"*Therefore be it resolved*, That John T. Donahue, county treasurer and *ex officio* collector of Will county, has neglected to render accounts and make correct settlements when required by law and requested thereto by the proper officers authorized to receive said funds and settle therefor, and furthermore has been and is in arrear with the county, and is guilty of misconduct in his said office, and that the public interests require his removal from said office."

The report made by the committee fully justified the finding that Donahue had failed to render accounts and make settlements when required by law, when requested thereto by

proper officers authorized to receive such funds and settle therefor, and that he was in arrears with the county.

After this resolution or finding was adopted, other proceedings were had and attempted, but on the 8th day of October, whilst this resolution remained in full force and effect, the board adopted another resolution, which is this:

"WHEREAS, John T. Donahue, county treasurer and *ex officio* county collector of the county of Will, has been guilty of gross misconduct in his office, particularly in this, to wit: in neglecting to render accounts and to make settlements when required by law, and also requested thereto by the proper officers authorized to receive said funds and to settle therefor, has been, and is, in arrears, and in divers other matters, as disclosed by the reports on file and of record, by sundry committees of the board:

" *Therefore be it resolved,* That Mr. John T. Donahue, county treasurer and *ex officio* collector of Will county, ought to be and is hereby removed from his said office."

Appellant appeared before the board and was heard, but failed to satisfy that body that there was any error or mistake in the report on which the finding was had. This finding was according to the requirements of the 15th section of the 36th chapter of the statute. (Rev. Stat. 1874, p. 321.) By these resolutions the facts required to exist before a removal could be had were found to exist. Appellant thereupon filed a petition for a writ of *certiorari,* which was issued, and on its return the record of the county board was certified to the circuit court. A hearing was had on the return as though a demurrer had been filed to it, and the court quashed the writ and held the return sufficient, and rendered judgment against petitioner, and he brings the case to this court by appeal.

Appellant urges that the evidence before the board of supervisors was insufficient to authorize his removal. This is a common law writ of *certiorari,* which lies from a superior

to an inferior court or inferior tribunal, and its purpose is to have the entire record of the inferior body brought before the court, that it may be inspected, to determine whether it had jurisdiction, or had exceeded its jurisdiction, or had failed to proceed according to the essential requirements of the law, where no appeal or other direct means of reviewing the proceeding is given. *Doolittle* v. *Galena and Chicago Union Railroad Co.* 14 Ill. 381; also, *Hyslop* v. *Finch,* 99 Ill. 171.

It does not require a return of the evidence or a certificate of facts outside of the record. On the return of the record to the court issuing the writ, the trial is had on the record, it being contrary to the practice to form any issue of fact, or to hear or consider evidence in relation to the original proceeding as heard on that trial. If the circuit court, on the return to the writ, finds from the record that the inferior tribunal had jurisdiction, and had not exceeded it, and had proceeded according to law, the writ will be quashed; but, on the contrary, if the court finds the inferior body had no jurisdiction, or had exceeded it, or had not proceeded according to law, it will quash the judgment and proceedings shown by the return. See *The People* v. *Wilkinson,* 13 Ill. 660; *Doolittle* v. *Galena and C. U. R. R.* 14 id. 381; *Chicago and R. I. R. R.* v. *Whipple,* 22 id. 105; *Chicago and R. I. R. R.* v. *Fell,* 22 id. 333; *Joliet and C. R. R.* v. *Barrows,* 24 id. 562; *Com'rs Highways* v. *Supervisors,* 27 id. 140; *Low* v. *Galena and C. U. R. R.* 18 id. 324.

The question is then presented whether the board of supervisors had legal authority and constitutional power to hear, determine, and remove appellant from office. He claims it had not, because that could be done only by impeachment, or, if not in that mode, then only by a trial by the circuit court, on a proceeding in the nature of a *quo warranto.*

It is urged that under the constitution the General Assembly is powerless to pass a law conferring such power on the board of supervisors, and for that reason the order of the

board is absolutely void.   This depends upon whether any constitutional provision prohibits that body from the exercise of such power.   There is no provision of that instrument which in terms prohibits it, or provides for the removal of such officers for nonfeasance, misfeasance or malfeasance in office.   The constitution, by section 15, article 5, provides that "the Governor, and all civil officers of the State, shall be liable to impeachment for any misdemeanor in office."

It is claimed, that as a county treasurer is commissioned by the Governor, collects and receives State revenue, settles with the Auditor, and pays the same to the State Treasurer, he performs functions for the State, and is in some sense an officer of the State, and is embraced in the 15th section of article 5.   A complete answer to this position is, that the 8th section of article 10 of the constitution, in unmistakable terms, declares he is a county officer, and being a county officer, the 15th section of article 5 can have no application; nor has any other provision of the constitution been referred to that has any explicit provision on this subject.

We are referred to the 2d section of the Bill of Rights, which declares, that "no person shall be deprived of life, liberty or property, without due process of law," as controling this question; that under this provision appellant could only be deprived of his title to or property in the office by a trial and judgment in a court of law; that no other trial, before any other tribunal, would be by due process of law, and that the General Assembly had no constitutional power to provide any other mode of trial.   It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office.   Offices are created for the administration of public affairs.   When a person is inducted into an office, he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public benefit.   It would be a misnomer and a per-

version of terms to say that an incumbent owned an office, or had any title to it.

The doctrine on this subject is thus stated in the case of *Conner* v. *The Mayor of New York*, 1 Selden, 285. It was there said: "Public offices in this State are not incorporeal hereditaments, nor have they the character or quality of grants. They are agencies. With few exceptions they are voluntarily taken, and may at any time be resigned. They are created for the benefit of the public, and not granted for the benefit of the incumbent. Their terms are fixed with a view to utility and convenience, and not for the purpose of granting emoluments during that period to the office holder. * * * The prospective salary or other emoluments of a public office are not property of the officer, nor the property of the State. They are not property at all. They are like daily wages unearned, and which may never be earned. The incumbent may die, or resign, and his place be filled, and the wages be earned by another. The right to the compensation grows out of the rendition of services, and not out of any contract between the government and the officer that the services shall be rendered by him."

This is correct in the sense that the officer does not own the title to the office in the manner that men own property; but by his commission or induction into office he acquires the legal right to exercise its functions, and to receive the emoluments that he earns, until the end of his term, or until his resignation, removal, or its forfeiture.

This disposes of the constitutional questions under the provision to which reference has been made. Then does any general provision of that instrument, or the purpose of all its provisions, prohibit the General Assembly from making provision for the removal of an imbecile, corrupt or dishonest officer, in any other manner than by the judgment of a court? We think not. The framers of that instrument were careful to provide the manner of removing all State officers, for mis-

demeanors, from office. But they seem to have been equally studious not to limit the General Assembly in its power to provide the necessary means for the removal of officers below the grade of State officers, except by the judiciary article, where a forfeiture and removal is provided for by impeachment or a judicial proceeding. This is a strong circumstance to show that other officers, whose impeachment, conviction and removal are not provided for by that instrument, were intended to be left in the discretion of the General Assembly as to the mode. Knowing, as they did, that the General Assembly had all legislative power,—unless limited in its exercise,—if that body intended that a person, not a State officer, or holding under the judiciary article, should not be removed except by the judgment of a court, they would have so provided. They knew that a proceeding by *quo warranto,* with the right to appeal, would be useless where the term fixed is of short duration, as it would expire before a final decision could be reached. The body, as practical men, could not have intended that such slow processes should be adopted, and thus permit a reckless, dishonest and irresponsible officer to collect and defiantly squander the public revenue, compel his bondsmen to stand by and see him working their financial ruin, and neither the public nor the individuals be able to check it, but to wait till his office expires before he is removed or checked in his destructive course. We must presume the framers of the constitution intended to place no limitation on the power of the General Assembly to provide ample and effective means to prevent such wrongs to the public and to individuals. Possessing legislative power, the General Assembly was fully competent to prescribe the offences which should work a forfeiture of this office, and provide what tribunal shall determine the fact. They have provided that defalcation in office shall be grounds of removal of a county treasurer, and that the county board should have power to determine the fact and make the removal, and we are clearly of opinion

that there is no limitation which forbids the General Assembly from exercising the power.

Nor is the election and induction of a person into an office such a contract as is protected under the obligation clause of the Federal and State constitutions.   Such relations were expressly reserved from its operation in the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 518, and it has been followed in numerous cases decided since that time.   This seems to be conceded, as appellant does not urge that clause as a prohibition on the exercise of the powers of removal.   This disposes of the constitutional questions.

As to the question whether an officer can be removed from office for misfeasance or malfeasance without a judicial sentence, there would seem to be little doubt.   It has been held they may, by many respectable courts.   In the case of *The State* v. *McGarry*, 21 Wis. 496, it was held the board of supervisors, under the statute conferring the power, and for the causes specified, might remove the incumbent of the office of inspector of the house of correction.   In the case of *The State* v. *Prince*, 45 Wis. 610, it was held the board of supervisors might, on statutory grounds, remove the clerk of the board.   In the case of *McGregor* v. *The Board of Supervisors*, 37 Mich. 388, it was held that the board of supervisors had power, under the statute, to remove the county treasurer.   In *Kernan* v. *Perry*, 24 Tex. 253, it was held that under a law conferring the power on the executive to appoint a superintendent of a lunatic asylum, without fixing his term of office, the Governor had the power to remove the incumbent, and his action in doing so could not be reviewed.   In the case of *Taft* v. *Adams*, 3 Gray, 126, it was held the legislature had power to shorten the term of any officer, when the term is not fixed by the constitution.   The case of *The State* v. *Daugherty*, 25 La. Ann. 119, held that power conferred by statute on the executive to remove an officer for cause, implies the power to judge of the existence of the cause.

Having been invested with both the power to appoint and to remove for cause, his action was not subject to review. The same rule is announced in Alabama and Georgia, that officers, when the constitution has not required impeachment, may under statutory provisions be removed without a proceeding by *quo warranto*, or judicial trial and judgment. See *Ex parte Wiley*, 54 Ala. 226; *Thompson* v. *Holt*, 52 id. 491; *State* v. *Frazier*, 48 Ga. 137.

In a number of the cases referred to, the same constitutional objections were urged that are raised in this case, but were disallowed. In the others, counsel, as well as the court, seem to have supposed there was no such question involved.

There are cases where it was said that the office being created by the constitution, the incumbent could be removed only by impeachment; but the expression is manifestly too broad, as it embraces in our constitution almost the entire list of officers, from the chief executive down to the most insignificant township officer. If this officer has such a title to the term of the office of treasurer as is protected by the constitution so he can only be removed on a trial and judgment of a court, then for the same reason no officer not enumerated as an officer of the State can be deprived of his office except by a judgment of forfeiture by a court. The holder of the most petty office in a township holds his place by the same right as does an officer whose place is provided for in the constitution. The office may not be so important, but he holds it by the same right,—by authority of law. In this neither has a superior right to the other, and both are entitled to the same protection in the right.

It is said that the finding of the fact that an officer is a defaulter, and removing him from office, is the exercise of judicial power, and the third article of the constitution prohibits the exercise of such power by any person other than an officer of the judicial department; and the board of supervisors belong to the executive and not to the judicial

department. It is, therefore, insisted that the action of the board is forbidden, and is consequently void. It may, in many cases, be a matter of difficulty to determine the precise line which divides the executive and judicial functions. It has been said that where the functionary hears, considers and determines, then he performs judicial acts. This definition is not strictly accurate. Take, for instance, an election board. It examines the ballots, counts, determines and certifies the result. The county clerk, and the persons he called to his assistance, examined the returns from the various towns, ascertained the result, declared and certified that appellant was elected, and on that certificate he was commissioned, and yet no one supposes they exercised judicial functions. They however heard, considered and determined, as much as did the board in auditing appellant's accounts and ascertaining he was in default. Had he died, they would have heard, considered and decided. So, had he removed from the county. Had he failed to file his bond and oath, the board would have been required to hear, consider and determine, and so had he become insane, and yet no one would be inclined to say there was the exercise of judicial functions in each of these cases; and yet the action would, in a degree, have been the same. There is in every ministerial or executive act a necessity for the hearing of evidence, a consideration of the evidence, and a determination based on it. When the Governor determines to call out the militia to suppress an insurrection, it is upon evidence of the existence of the fact, the consideration of the question of whether the emergency exists requiring him to act, and upon that evidence he decides the question,—and this, too, although the emergency is asserted on one side and denied on the other, and the evidence may be contradictory. So it is seen the definition is by no means accurate. It embraces cases that are not judicial, and hence is too comprehensive. From the cases we have referred to it will be seen that such a removal

as this was not regarded as judicial in its nature, and such acts were held valid notwithstanding they were performed by a single executive officer, or by an executive body.

We are, therefore, of opinion that the settling of this treasurer's accounts, and finding he had not settled and accounted for moneys of the county as required by law, and that he had been, and then was, in arrears with the county, and removing him from office, was not judicial. And we have no doubt the General Assembly had ample power to authorize the board to act, and it is legal and valid. .

In this court, the case of *Ex parte Thatcher*, 2 Gilm. 167, was a removal of a county clerk by the county commissioners' court. That was a body invested with large ministerial, but limited, if any, judicial powers. The statute had conferred the power on that body, and having exercised the power, and the clerk refusing to obey an order to surrender the books and papers to the person appointed as his successor, he was imprisoned for contempt, and he brought the case to this court on *habeas corpus*. On the trial it seems that the question of the constitutional power of the body to remove him summarily, did not occur to counsel, or the court, or the judges who dissented in the case. The power was evidently taken as granted that it was a ministerial and not necessarily a judicial act.

But it is insisted that the board of supervisors should not be intrusted with such power,—that such bodies are liable to be swayed by passion, prejudice and improper considerations. The supervisors, like almost every other officer, are elected by the people, and this is one of the duties for which they are elected. All know that governmental power is liable to abuse. Government can be administered only through human agencies, and until men become perfect and vastly wiser than at present, errors will be committed by officials in discharging their duty, and by the people in selecting them. Within the undisputed limits of official power

to those administering the affairs of the different departments of government, much injustice may be inflicted and great wrong perpetrated, for which there is and can be no remedy. The ablest and purest judge may render an erroneous decision, ruinous in its consequences. The Governor may appoint a person to office wholly unfitted to a place of high trust; the General Assembly may, from mistaken views of policy, adopt measures highly detrimental to the public or to individuals, and which may operate oppressively, and yet if each acts within the scope of his authority, there is and can be no remedy for wrongs thus inflicted. The power to answer the ends of government must, from necessity, be liable to abuse and of producing great evil, even when exercised within admitted limits. It is only by wisdom, prudence and integrity that government can be salutary to the people. Ignorance, rashness, prejudice, passion or cupidity may abuse the exercise of legitimate power so as to produce great oppression. Yet this is not a legitimate argument against delegating power to tribunals, to be exercised for governmental purposes. The only means of avoiding such evils is, for the people to select suitable persons to pass and administer laws.

Perceiving no error in the record of the court below, the judgment is affirmed.

*Judgment affirmed.*