Minshall, J.
The decision of the case involves the de *108 termination of a number of questions we will now proceed to consider.
1. It is claimed by the relator that the statute under which the respondents were appointed and claim the right to act as police commissioners of the city of Cincinnati, passed April 3, 1885 (82 Ohio L. 101-111), is a special, and not a general one, conferring corporate power, and so in conflict with section 1, article 13, of the constitution of the state, prohibiting such legislation.
But it is now too well settled by the decisions of this court to be called in question, that legislation may be adapted to the different classes into which the municipal corporations of the state have been classified by the Revised Statutes, Tit. 12, Div. 2, ch. 1, without violating the provision of the constitution just referred to. The distinction is this, that a law applying to a certain class of cities, fixed by previous legislation, into which other municipal corporations may enter, and from which they may pass into other classes, by increase of population, is not special but general, since the grade of any particular city is not designated by the act, but depends upon its growth in population, as it may, by such growth, pass from one grade or class to another. State v Pugh, 43 Ohio St. 98, and the cases cited by Owen, J., delivering the opinion of the court, at p. 112.
The act under consideration in that case was held invalid, because it was not merely made applicable to the grade and class to which Columbus then belonged, but because it was the only city in the grade and class to which it then belonged, or could belong in the next five days from the passage of the act, the time in which the powers conferred were required to be exercised; after the lapse of that time neither Columbus, nor any other city of its grade, could have exercised the powers conferred by the act.
To hold this statute invalid, for the reason stated, would be to deprive, not only Cincinnati, but every city of the state of any system of municipal government whatever ; as, all statutes conferring corporate power upon the municipalities of the state apply, in terms, to cities of certain *109 grades and classes. There should be something more than a mere question as to the validity of a statute, to warrant a court in a holding that must lead to such serious consequences.
2. In answer to the information, it is claimed by the respondents, that the governor had no power to remove them; and, again, that if he had, it was not properly exercised.
The first claim is upon the assumed ground, that the power conferred on the governor by the statute to remove any of them for official misconduct, is judicial in its nature, and, though conferred by the act, can not be exercised, as the judicial power of the state is, by section 1, article 4, of the constitution, conferred upon the courts of the state only.
This is not to be regarded as an entirely new question. It has been much discussed by courts and writers, without being able to formulate any general rule upon the subject. What is judicial power can not be brought within the ring-fence of a definition. It is undoubtedly power to hear and determine; but this is not peculiar to the judicial office. Many.of the'acts of administrative and executive officers involve the exercise of the same power. Boards for the equalization of taxes, of public works, of county commissioners, township trustees, judges of election, viewers of roads, all, in one form or another, hear and determine questions in the exercise of their functions, more or less directly affecting private, as well as public rights. It may be safely conceded, that power to hear and determine rights of property and of person between private parties, is judicial, and can only be conferred on the courts (Merrill v. Sherburne, 1 N. H. 199.) But such a definition does not necessarily include this case. The incumbent of an office has not, under our system of government, any property in it. His right to exercise it-is not based upon any contract or grant. It is conferred on him as a public trust to be exereised for the benefit of the public. Such salary as may be attached to it, is not given because of any duty on the part *110 of the public to do so, but to enable the incumbent the better to perform the duties of his office by the more exclusive devotion of his time thereto. Official duties may, and in some instances are, imposed and required to be performed by the citizen, without any compensation whatever, where there is no constitutional provision requiring it. A public office and its creation is a matter of public, and not of private, law. The legislature had the power to provide for the creation of a board of police commissioners for cities of the grade and class of Cincinnati. This power carried with it, as an incident of its exercise, the power to provide a mode of removal, unless restrained by some provision of the constitution, to the mere act of providing for the appointment of members of the board, which is not the case. The organization and government of cities is left, by the constitution, to the general assembly, with the requirement (art. 13, § 6) that it shall, by general laws, provide therefor; and the entire system of municipal government in this state has, in the exercise of this power, been created by the legislature. Not one of the officers of a city or village has any recognized existence in the constitution. It is different as to county and township officers. See article 10, relating to county and township officers. And here it will be observed that section 6 of this article provides that: “Justices of the peace, and county and township officers may be removed in such manner and for such cause as shall be prescribed by law.” There is no requirement that the power of removal, that may be prescribed by law, shall be conferred on the courts, for the legislature is to provide the manner, as well as the cause of removal. In the exercise of this power, the legislature has provided for the removal of county treasurers by the county commissioners (§§ 1126 and 1127, Rev. Stats.). The power has been frequently, and wisely, exercised; and, so far as we can learn, has never been questioned in the courts. This section does not in terms extend to officers of municipal corporations ; and, for the obvious reason that, as already stated, such officers have no recoguized existence in the *111 constitution. They are to be created and provided for by the legislature. Now, is there any room for doubt that the legislature may, in providing for the organization of cities and villages, adopt the policy of the constitution contained in this section, in providing for the removal of such municipal offices as it may, in the exercise of the power granted, provide shall be elected or appointed by cities and villages. Surely it may be inferred that, if the removal of a county or township officer for cause, does not involve the exercise of judicial power, within the meaning of section 1, article 4, and that it may be reposed elsewhere than in a court, there is the fullest warrant for saying, that the same is time as to the removal of municipal officers, created by the legislature.
The view here taken will be found sustained, not only by the decisions of this court, but also by those of other ■states of weight and respectability.
In The State ex rel. v. Harmon, 31 Ohio St. 250, the nature of judicial power was considered by Judge White. The case involved the validity of the power conferred by statute upon the senate to hear and determine the contested election of a judge. It was argued with much ability and earnestness by counsel for the respondent, that such power could not be conferred on that body, citing and relying on section 1, article 4, in connection with section 32, article 2, of the constitution, the former conferring judicial power on the courts, and the latter prohibiting the exercise, by the legislature, of any such power not expressly conferred. But the court held that the power conferred on the senate was not judicial power within the meaning of section 1, article 4. The following is a part of the language used by Judge White in delivering the opinion of the court: “ That the senate is not a court established under the judicial article of the constitution, is plain. Hence, if the trial of contested elections is necessarily the exercise of judicial power, within the meaning of that article, authority to try such cases can not be conferred upon the senate.
“ The distribution of powers among the legislative, ex *112 ecutive, and judicial branches of the government is, in a general sense, easily understood; but no exact rule can be laid down, a priori, for determining, iu all cases, what powers may or may not be assigned by law to each branch. . '. “What constitutes judicial power, within the meaning of the constitution, is to be determined in the light of the common law and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution.
“ "Whether power, in a given instance, ought to be assigned to the judicial department, is ordinarily determinable from the nature of the subject to which the power relates. In many instances, however, it may appropriately be assigned to either of the departments.
“ It is said authority to hear and determine a controversy upon the law and fact is judicial power.
“ That such authority is essential to the exercise of judicial power, is admitted; but it does not follow that the exercise of such authority is necessarily the exercise of judicial power.
“ The authority to ascertain facts, and to apply the law to the facts when ascertained, appertains as well to the other departments of the government as to the judiciary. Judgment and discretion are required to be exercised by all the departments.
“The exercise of the power of eminent domain vested in county and township boards and in corporations, is not the exercise of judicial power, within the meaning of the constitution; while the exercise of the same power by the courts, if vested in them, would be judicial.”
He then cites In the matter of Cooper, 22 N. Y. 84, and quotes the language used by Selden, J., which is much to the same purport.
In Hambleton v. Dempsey, 20 Ohio, 168, the proceedings of a board of equalization were before the court; and, though the exercise of its power “ to equalize the assessments of all personal property” necessarily involved the *113 power of hearing and determining, the validity of the power reposed in such boards was not questioned.
A different view has been taken by the courts of some of the states. State v. Pritchard, 36 N. J. Law, 101; Page v. Hardin, 8 B. Mon. 672; Commonwealth v. Slifer, 25 Pa. St. 28; and Dullam v. Willson, 53 Mich. 392. But these decisions have, as a rule, proceeded upon the ground, that an incumbent has a property in his office, and that he can not be deprived of-his right without the judgment of a court. This view finds support in the doctrines of the common law, which regarded an office as a hereditament, but has no foundation whatever in a representative government like our own.
The doctrine is opposed to the view taken by other courts of equal learning and ability. State v. McGarry, 21 Wis. 496; State v. Prince, 45 Wis. 610; Keenan v. Perry, 24 Tex. 253; State v. Doherty, 25 La. Ann. 119; Taft v. Adams, 3 Gray, 126; Ex parte Wiley, 54 Ala. 226; Thompson v. Holt, 52 Ala. 491; State v. Frazier, 48 Ga. 137; Dougan v. District Court Lake County, 22 Am. L. Reg. (N. S.) 528; Donahue v. County of Will, 100 Ill. 94; Patton v. Vaughan, 39 Ark. 211.
In Donahue v. County of Will, supra, which was very similar in its facts to this one, the judge delivering the opinion says : “ It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office. Offices are created for the administration of public affairs. When a person is inducted into an office, he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public benefit. It would be a misnomer and a perversion of terras to say that an incumbent owned an office, or had any title to it.’’
The question as to whether an officer could be removed for misfeasance or malfeasance without a judicial sentence, was fully examined upon principle and authority, and no doubt was entertained but that he could ; and it was there held that an act which authorizes county boards to remove *114 county treasurers for a neglect or refusal to render an account, etc., is not in contravention of the constitution of that state, and is a valid law.
In State ex rel. Flinn v. Wright, 7 Ohio St. 333, it is held that the general assembly can vacate the office of a judge, created by it, before the expiration of the term ; and that the light of the incumbent to the salary ceased with the vacation of the office, and a writ of mandamus to compel the auditor to draw a warrant therefor was refused — a result that could not have been reached consistently with the idea that the relator had a property in his office.
It is claimed that a distinction should be taken in the cases where the power of appointing and removing are reposed in one and the same person, and where it is reposed in different persons. We are aware that this distinction .exists in the facts of some of the cases, but we are not aware that any distinction in principle has been based upon it. Whether the person removed was or was not appointed to his office by the official that is vested with the power to remove, can not, as we see, change the essential character of the power of removal.
It is also claimed, that a distinction should be taken between the ease where an appointment to an office is made to be held by the appointee at the pleasure of the appointing power, and, where it is with a provision for removal for misconduct. But there is none in principle, so far as the right to remove is concerned. The office, in either •case, is held subject to the terms upon which it was created, and the mode of removal prescribed. As it may be so created as that the incumbent shall hold at the pleasure of ■the appointing power, then, for a stronger reason, the appointment may be made to depend upon removal for cause, irrespective of where the power to remove may be lodged. 'The manner of filling and vacating the office being unaffected by constitutional provisions, the manner prescribed by the legislature must prevail in either ease. It is a strange sort of logic which reaches the result, that the of *115 fice may be accepted in the manner prescribed by the legislature, and the mode of removal rejected.
3. The next question is as to whether the exercise of power can be reviewed in this court. As the governor had the power to remove, and as in exercising it he did not act in a judicial capacity within the meaning of the constition, it would seem to follow as a corollary, that the exercise of the power by him, can not be inquired into in this court, and held for naught in a proceeding in quo warranto, simply because he may have erred in exercising the power reposed in him by the statute. The only question that this court can consider, is, whether charges involving official misconduct were preferred, of which the parties had notice, and that he acted upon these charges, and removed the respondents, for the reasons stated in the charges. The law as to this question is, as we think, accurately stated by Dixon, C. J., in State v. McGarry, supra: “The cause must be one which touches the qualifications of the officer for the office, and shows that he is not a fit or proper person to perform the duties; and when such a cause is assigned, the power to determine whether it exists or not is vested exclusively in the board, and its decision upon the facts can not be reviewed in the courts. The only question of judicial cognizance is as to whether the board has kept within its jurisdiction, or whether the cause assigned is a cause for removal under the statute.” See also the following cases cited, supra, State v. Prince, Keenan v. Perry, Ex parte Wiley, Thompson v. Holt, State v. Frazier, State v. Doherty, Donohue v. County of Will, and, also, the case of State v. Chase, 5 Ohio St. 528.
The cases taking a different view are, as a rule, those holding that the powerto remove is a judicial one, and can only be exercised by the courts. Thus, in Dullam v. Willson, supra, it is said to be “ undoubtedly true that no court can review the lawful discretion of any body that is not a court, and that the executive stands in this respect on the ' same footing with all other persons and bodies.” The decision of the court was placed on the ground that the *116 power the governor had exercised — the removal of a trustee of a deaf and dumb asylum — was judicial in character, and could not lawfully be conferred on him.
It may be admitted that such power is liable to abuse, Yet,” as said by Walker, J., in Donahue v. County of Will, "this is not a legitimate argument against delegating power to tribunals to be exercised for governmental purposes.” For an abuse of such power, the remedy is, either to the people in the election of a successor to the officer abusing the power reposed, or, when the removal is characterized by circumstances of flagrant abuse, he may be impeached and deprived of his office.
The charges that were presented to the governor, and upon which he acted in removing the defendants, were such as to leave no question but that they amounted to official misconduct, and for which they should have been removed, if found true. It was charged that they had appointed a large number of persons to -places on the police force wholly unfit to act as'police officers, some of whom are gamblers, some have served terms in the workhouse, in the penitentiary, in the jail, have been inmates of the house of refuge, some have been keepers of houses of prostitution, and a number have been discharged by said board for drunkenness and other offenses repeatedly committed, and have been reinstated notwithstanding said offenses. It is time these charges are denied in manner and form, but whether true or not was for the governor to determine. This court can only pass upon the sufficiency of the charges as a matter of law — not upon their truth. But it may be observed that while each of the defendants denied the charges in manner and form, yet each does admit the keeping of persons on the police force who had been convicted of offenses disqualifying them for such positions, but extenuate the charge by the claim that it was a proper thing to encourage such persons; and as to Mullen and White, each of whom had been pardoned before the expiration of their terms of imprisonment, they claim, that they were restored thereby to citizenship, and entitled to the same *117 confidence as if they had never been convicted. But conceding all that can be said of the general duty of encouraging and assisting those who have erred, yet this duty assumes a very different aspect in the case of a citizen clothed with the public duty of selecting suitable persons to preserve the peace and good order of a community. The charity of forgiveness may not always consist with the sterner duties exacted by the responsibility of his position. (Whatever the theory of the law may be as to the effect of a pardon, it can not work such moral changes as to warrant the assertion that a pardoned convict is just as reliable as one who has constantly maintained the character of a good citizen. It is a perversion of language to give to the views expressed by Judge Okey in Knapp v. Thomas, 39 Ohio St. 377, such a construction. He never meant any thing of the kind. So that whilst we rest the decision upon the grouud already stated, that the action of the governor in removing the defendants, can not be reviewed in this court, yet the facts disclosed by the answers warrant the statement that the charges were at least in part true, and might be regarded as furnishing sufficient ground for the removal of the defendants.
4. But it is also contended that, under section 1542 of the Revised Statutes, the commissioners, though lawfully removed by the governor under the provisions of section 1872, must remain in office until their successors are elected and qualified. We can not adopt this view. It is difficult to understand how an officer, who has been removed from his office for official misconduct, can hold over for any purpose. When removed he ceases to be an officer, and there are no powers left in him as an officer upon which to hold over.
The demurrers to the answers are sustained; and the cause having been submitted to the court upon the pleadings and demurrers, judgment of ouster is rendered against the defendants.

Judgment of ouster.